IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MICHAEL J. AXTELL, | ) | 8:08CV532 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| ROBERT HOUSTON, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court on Petitioner Michael J. Axtell's ("Axtell")
Petition for Writ of Habeas Corpus ("Petition"). (Filing No. 1.) Respondent has filed
an Answer (filing no. 9), a Brief on the merits of the Petition (filing no. 13), State
Court Records (filing nos. 8, 11, and 12), and a Reply Brief (filing no. 15). Axtell has
filed a Brief on the merits of the Petition. (Filing No. 14.) The court deems this
matter fully submitted.

***BACKGROUND***

The pertinent factual background is set forth in *State v. Axtell*, No. A-07-1100
(Neb. Ct. App. Jun 3, 2008), and the court summarizes it here. (Filing No. 12-2,
Attach. 1, at CM/ECF p. 2.) On February 23, 2007, Kearney Police Officer Anthony
Faz ("Faz") questioned Axtell regarding an assault. Prior to questioning, Faz pat
searched Axtell and removed a pocketknife from his person. Faz then seated Axtell
in the backseat of Kearney Police Officer Kevin Thompson's ("Thompson") police
cruiser, questioned him for approximately 10 minutes, and then allowed him to leave.
Faz and Thompson alternately supervised Axtell as he sat in the cruiser. Following
his shift, Thompson turned over possession of the cruiser to Kearney Police Officer
Tracy Suchsland ("Suchsland"), who discovered a bag of methamphetamine in the
backseat. Axtell was subsequently arrested and charged with possession of the
methamphetamine. (*Id.*)

A trial was held in the District Court of Buffalo County, Nebraska. (*Id.* at CM/ECF p. 3.) Thompson and Suchsland testified regarding their routine practice of thoroughly inspecting their assigned cruiser before and after every shift. The purpose of these inspections is to ensure the vehicle is free of contraband before and after the cruiser is used. Thompson testified that he inspected the cruiser and found no contraband prior to Axtell sitting in the backseat. He also testified that Axtell was the only person to sit in the backseat during Thompson's shift other than Suchsland. Thompson turned over possession of his cruiser to Suchsland, who testified that he performed his routine search of the cruiser and discovered the bag of methamphetamine. (*Id.*)

Axtell's trial attorney questioned Thompson and Suchsland regarding their inspection of the police cruiser. He attempted to show that Thompson may have failed to discover the bag of methamphetamine during his search of the cruiser, and that someone other than Axtell had left the bag in the backseat. (*Id.*) Further, Axtell's trial attorney questioned the officers about a piece of duct tape found on the bag of methamphetamine. (*Id.* at CM/ECF p. 4.) The duct tape was not produced at trial and little evidence was presented regarding the duct tape's location on the bag or its condition. However, there was testimony that the duct tape was tested for fingerprints and none were found. (*Id.*)

The jury found Axtell guilty of possession of methamphetamine. He was sentenced as a habitual offender to a term of not less than 10 nor more than 30 years' imprisonment. (Filing No. 8-3, Attach. 2, at CM/ECF p. 50.)

Axtell filed a direct appeal, and his conviction was affirmed by the Nebraska Court of Appeals on June 3, 2008. (Filing No. 12-2, Attach.1, at CM/ECF pp. 1-9.) The Nebraska Supreme Court overruled Axtell's petition for further review. (Filing No. 8-8, Attach. 7, at CM/ECF p. 2.) Axtell thereafter filed a verified motion for postconviction relief in the Buffalo County, Nebraska District Court. (Filing No. 8-

15, Attach. 14, at CM/ECF pp. 35-44.)  On December 5, 2008, Axtell filed a motion to dismiss his appeal, which was granted by the Nebraska Court of Appeals.  (Filing No. 8-16, Attach. 15, at CM/ECF p. 1.)

On December 18, 2008, Axtell filed his Petition in this court.  Condensed and summarized, Axtell seeks a writ of habeas corpus because:

| | |
|---|---|
| Claim One: | Petitioner was denied effective assistance of counsel and due process of law because (1) trial counsel did not provide meaningful adversarial testing of the witnesses; (2) asked "little if any pertinent questions relating to the evidence seized"; (3) did not challenge the loss of potentially exculpatory evidence; (4) did not investigate the design of the police cruiser where evidence was found; and (5) did not "appear to [have] any trial strategy." |
| Claim Two: | (1) "The prosecution failed to produce proof beyond a reasonable doubt of every element of the charged offense because the evidence presented at trial did not support the allegations against Petitioner, and (2) the Kearney Police Department "failed to follow proper evidentiary procedures when examining and testing evidence." |

(Filing No. 7 at CM/ECF pp. 1-2.)

Where necessary, further facts are provided below.  The court now turns to the merits of Axtell's claims.

## *ANALYSIS*

### I.  **Claim Two-Part 2 – Exhaustion/Procedural Default**

In Claim Two-Part 2, Respondent alleges that the Kearney Police Department

3

failed to follow proper evidentiary procedures when examining and testing the evidence. (Filing No. 7 at CM/ECF p. 1.) Respondent argues that Claim Two-Part 2 is procedurally defaulted and therefore cannot form the basis of habeas corpus relief. (Filing No. 13 at CM/ECF p. 8.)  The court agrees.

As set forth in 28 U.S.C. § 2254(b)(1):

(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

     (A)    the applicant has exhausted the remedies available in the courts of the State; or

     (B)    (I)    there is an absence of available State corrective process; or

          (ii)    circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1)

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  A state prisoner must therefore "fairly present" the substance of each federal constitutional claim to the state courts

4

*before* seeking federal habeas relief.  *Id.* at 844.  In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been  presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner.  *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005).

If a claim has not been presented to the Nebraska appellate courts and is now barred from presentation, the claim is procedurally defaulted, not unexhausted. *Akins*, 410 F.3d at 456 n. 1.  Under Nebraska state law, "[a]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." *State v. Ortiz*, 670 N.W.2d 788, 792 (Neb. 2003). In such circumstances, when there exists no currently available state court remedy, the claim is procedurally defaulted, not unexhausted, and the petitioner is entitled to an opportunity to demonstrate cause and prejudice to excuse the default.  *Akins*, 410 F.3d at 456 n. 1.

Here, Axtell did not invoke "one complete round" of the Nebraska appellate review process on Claim Two-Part 2.  It is unclear whether Axtell fairly presented Claim Two-Part 2 in his direct appeal. (*See* Filing 11-2, Attach. 1, at CM/ECF p. 25.) Regardless, the court finds that Axtell did not fairly present it in his petition for further review, though Axtell claims the petition "alluded to" it. (Filing No. 14 at CM/ECF p. 7.)

Because Axtell did not present Claim Two-Part 2 in his petition for further review, he has not exhausted it in the state courts, and he is now barred from doing so because he cannot submit a second motion for post conviction relief where, as here, the basis for relief was clearly available at the time he sought post conviction relief in state court. *See Ortiz*, 670 N.W.2d at 792.  Therefore, Claim Two-Part 2 is procedurally defaulted.

To excuse a procedural default, a petitioner must demonstrate either cause for the default and actual prejudice as a result of the alleged violation of federal law, or, in rare cases, that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Although there is no precise definition of what constitutes cause and prejudice, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n. 24 (1999). Additionally, the Eighth Circuit has held that ineffective assistance of counsel at the state post conviction stage is not sufficient to constitute "cause" to excuse the procedural default of a habeas claim. *Armstrong v. Iowa*, 418 F.3d 924, 927 (8th Cir. 2005).

Axtell claims the procedural default of Claim Two-Part 2 should be excused because his court-appointed attorney's failure to present the claim in the petition for further review should be imputed to the state, as it was the state's duty to provide him with the effective assistance of counsel. (Filing no. 14 at CM/ECF p. 7.) The court disagrees, and further finds that Axtell has not submitted any argument or evidence which shows that he, or his counsel, were objectively impeded from filing a petition for further review on all of the claims contained in the Petition. As such, Axtell has not established the existence of cause for the procedural default of Claim Two-Part 2.

Axtell also argues that he is "actually innocent" of possession of methamphetamine and this court must review his claims to prevent "a fundamental miscarriage of justice." (Filing No. 14 at CM/ECF p. 1.) To fit within the fundamental miscarriage of justice exception, a petitioner must make a showing of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 321 (1995). A claim of actual innocence "is one of actual as opposed to legal innocence" and "is not itself a

6

constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Whitmill v. Armontrout*, 42 F.3d 1154, 1157 (8th Cir. 1994) (quotation omitted). Further, a petitioner who raises a gateway claim of actual innocence must satisfy the following two-part test:

> First, the petitioner's allegations of constitutional error must be supported with new reliable evidence that was not presented at trial. Second, the petitioner must establish that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.

*Weeks v. Bowersox*, 119 F.3d 1342, 1351 (8th Cir. 1997) (quoting *Bowman v. Gammon*, 85 F.3d 1339, 1346 (8th Cir. 1996)).

In *Schlup*, the United States Supreme Court addressed the standard of proof that governs the review of actual innocence claims:

> To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

*Schlup*, 513 U.S. at 324.

Axtell was required to provide new reliable evidence that was not presented at trial in order to prevail on his actual innocence claim, which he did not do. Consequently, Axtell cannot utilize the actual innocence gateway and his procedural default cannot be excused.

7

Axtell has neither established the existence of cause for the procedural default of Claim Two-Part 2, nor demonstrated that failure to consider the claim will result in a fundamental miscarriage of justice.  As such, Claim Two-Part 2 is dismissed.

## II.  Analysis of Claim One and Claim Two-Part 1

### A.    Standard of Review

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the facts and the law.  *See* 28 U.S.C. § 2254(d).  With regard to the deference owed to factual findings of a state court's decision, a federal court is bound by those findings unless the state court made a "decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Further, section 2254(d)(1) states that a federal court may not grant a writ of habeas corpus unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts.  *Id.* at 399.  Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

8

This high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460-61 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

## B.    Claim One

Axtell alleges in Claim One that his trial counsel's performance resulted in a denial of the effective assistance of counsel and due process of law. (Filing No. 7 at CM/ECF p. 1.) A claim of ineffective assistance of counsel is reviewed under the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

### 1.    The *Strickland* Standard

*Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687; *see also Bryson v. United States*, 268 F.3d 560 (8th Cir. 2001); *Williamson v. Jones*, 936 F.2d 1000, 1004 (8th Cir. 1991).

The first prong of the *Strickland* test requires the petitioner to demonstrate that his attorney failed to provide reasonably effective assistance. *Strickland*, 466 U.S. at 687-88. In conducting such a review the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The second prong requires the petitioner to demonstrate "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Hubbeling v. United States*, 288 F.3d 363, 365 (8th Cir. 2002). A court need not address the reasonableness of the attorney's skills and diligence if the movant cannot prove prejudice under the second

prong of this test. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) (quoting *Cheek v. United States*, 858 F.2d 1330, 1336 (8th Cir. 1988)). Further, as set forth in *Strickland*, counsel's "strategic choices made after thorough investigation are virtually unchallengeable" in a later habeas corpus action. 466 U.S. at 689.

Additionally, the Supreme Court has very recently emphasized that the deference due the state courts applies with vigor to decisions involving ineffective assistance of counsel claims. *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1418-20 (2009) (reversing the Ninth Circuit Court of Appeals and holding that the decision of the California Court of Appeals, that the defendant was not deprived of effective assistance of counsel when his attorney recommended withdrawing his insanity defense during second phase of trial, was not contrary to or an unreasonable application of clearly established federal law; also concluding, among other things, that there was no reasonable probability that, but for counsel's alleged unprofessional error, the result of the proceeding would have been different).

In *Knowles*, the Justices stressed that under the *Strickland* standard, the state courts have a great deal of "latitude" and that "leeway" presents a "substantially higher threshold" for a federal habeas petitioner to overcome. Thus:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable-a substantially higher threshold." *Schriro*, supra, at 473, 127 S. Ct. 1933. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more

10

general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

*Id.* at 1420.

### 2.      Claim One – Ineffective Assistance of Counsel

Axtell claims that his trial counsel, Michael W. Baldwin ("Baldwin"), was ineffective because he failed to provide meaningful adversarial testing of the witnesses, failed to challenge the loss of potentially exculpatory evidence, failed to investigate the design of the police cruiser, and failed to have any trial strategy. (Filing No. 7 at CM/ECF pp. 1-2.)  Axtell's argument is without merit.  As discussed below, the court agrees with the Nebraska Court of Appeals that Baldwin's performance was reasonable and nothing Axtell has argued shows any prejudice to him.  (*Id.* at CM/ECF pp. 5 and 8.)

Although the Nebraska Court of Appeals did not specifically allude to Baldwin's "trial strategy," the court discussed Baldwin's performance in detail and determined that his actions were reasonable.  Specifically, the court found that Axtell did provide meaningful adversarial testing of the witnesses by questioning Thompson, Faz, and Suchsland extensively about the layout of the cruiser.  (*Id.* at CM/ECF p. 5-6.)  Further, the court addressed Axtell's argument that Baldwin failed to challenge the loss of the potentially exculpatory duct tape:

> Given that the issue for the jury was simple and straightforward–did Axtell leave behind a plastic bag of illegal drugs in the police cruiser?–we are not able to envision how more focus on the duct tape would have benefitted Axtell, nor can be [sic] say that trial counsel's performance was unreasonable.

(*Id.* at CM/ECF p. 6.)  Finally, the court addressed Axtell's argument that Baldwin failed to investigate the design of the police cruiser:

> Axtell's counsel did question officers Thompson, Faz, and Suchsland extensively about the layout of the cruiser.  Axtell contends that his counsel should have produced photographs of the cruiser's back seat. Axtell suggests that the jury was unable to accurately picture the cruiser's layout, but based on his counsel's questioning and presentation of evidence we do not believe this is correct.  Axtell's counsel's decision not to produce a photograph of the cruiser's back seat was reasonable, particularly given his oral examination of the officers regarding the back seat's layout.

(*Id.*)

Respondent argues that the foregoing findings of fact and conclusions of law are entitled to deference under the statutory standard of review that applies to factual and legal conclusions reached by the state courts.  (Filing No. 13 at CM/ECF pp. 7-8.) Respondent is correct that, as set forth above, the court must grant substantial deference to the Nebraska state court decisions.  The court has carefully reviewed the record in this matter and finds that the Nebraska state court decisions on Axtell's ineffective assistance of counsel claim are not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  Axtell has not submitted any evidence, let alone clear and convincing evidence, that the Nebraska Court of Appeals was incorrect in any of its factual determinations.  28 U.S.C. § 2254(e)(1).

### 3.    Claim One – the *Cronic* Exception to the *Strickland* Standard

12

The court now addresses the due process component of Axtell's Claim One.[1] As best as the court can tell, Axtell claims that Baldwin's errors were so great that a presumption of prejudice is warranted pursuant to the United States Supreme Court's decision in *United States v. Cronic*, 466 U.S. 648 (1984). (Filing No. 14 at CM/ECF pp. 3-4 (*see also* Filing No. 11-2, Attach. 1, at CM/ECF pp. 14-24).)

Although *Strickland* ordinarily applies to claims of ineffective assistance of counsel, the United States Supreme Court has carved a very narrow exception to *Strickland* where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659. In such cases, prejudice is presumed, eliminating the need to prove the second prong of the *Strickland* test. *Id.* The Eighth Circuit has described this narrow exception as follows:

> [The court will] presume prejudice only when surrounding circumstances justify a presumption of ineffectiveness[,] and courts have been appropriately cautious in presuming prejudice. When the Supreme Court spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, [it] indicated that the attorney's failure must be complete. The failure to oppose the prosecution's case must involve *the entire proceeding, not just isolated portions*. Apart from circumstances of such magnitude, there is generally no basis for finding a Sixth Amendment violation unless the

---

[1]Respondent argues that the due process component of Claim One is procedurally defaulted. (*See generally*, Filing Nos. 9, 13, and 15.) However, even when there is a procedural question presented, a court may alternatively reach the merits where the record is adequate to do so. *See*, *e.g.*, *Winfield v. Roper*, 460 F.3d 1026, 1038 (8th Cir. 2006), *cert. denied*, 127 S. Ct. 2256 (2007) (holding that, where the record before the court presented adequate information upon which to base a decision on the merits of the petitioner's ineffective assistance of counsel claim, a court may alternatively consider the merits of the petitioner's claim rather than concentrating only on procedural questions). The court therefore declines to resolve the procedural default issue regarding the due process component of Claim One and instead addresses the merits of the claim.

accused can show how specific errors of counsel undermined the reliability of the finding of guilt, i.e., *Strickland* prejudice.

*U.S. v. White*, 341 F.3d 673, 678 (8th Cir. 2008) (internal citations and quotations omitted) (emphasis added).

The due process component of Claim One is without merit. As set forth above, the Nebraska Court of Appeals found, and this court agrees, that Baldwin's performance was reasonable. Further, even if the court had found some aspect of Baldwin's performance deficient, it cannot be said that Baldwin completely failed to test the prosecution's case throughout the entire proceeding. *See White*, 341 F.3d at 678. Thus, *Strickland*, not *Cronic*, governs the analysis of Axtell's ineffective assistance of counsel claim, and the Nebraska state courts correctly applied *Strickland* and other Supreme Court holdings. In light of these findings, Axtell's Claim One is dismissed.

## C.    **Claim Two-Part 1**

For his Claim Two-Part 1, Axtell argues that the prosecution failed to produce proof beyond a reasonable doubt of every element of the charged offense. (Filing No. 7 at CM/ECF p. 2.) As set forth by the Eighth Circuit, an applicant is entitled to habeas corpus relief if it is found that no rational trier of fact could have found proof of guilt beyond a reasonable doubt based upon the evidence adduced at trial. *Liggins v. Burger*, 422 F.3d 642, 647 (8th Cir. 2005). Thus, a reviewing court must consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt after viewing the evidence in the light most favorable to the prosecution. *Id.*

As best as the court can tell, Axtell has argued that no rational trier of fact would have found him guilty of possession of methamphetamine had proper

instruction been given to the jurors.  (Filing No. 14 at CM/ECF p. 17.)  Specifically, Axtell has claimed that the trial court should have instructed the jury regarding "the requirements of constructive possession."  (*Id.* at CM/ECF p. 15.)

To the extent Axtell argues that the jury received improper instruction, the claim is not properly before the court because Axtell did not present it in the state courts and he did not include it in his Petition.  To the extent Axtell argues that the prosecution failed to produce proof beyond a reasonable doubt of every element of the charged offense, Axtell has not presented sufficient evidence to call the state court's findings into question.  *See* 28 U.S.C. § 2254(e)(1). The evidence, viewed in the light most favorable to the prosecution, demonstrates that Officers Thompson and Suchsland thoroughly examined the backseat of the cruiser before and after Axtell occupied it and Axtell was the only individual to sit in the backseat at the relevant time other than a law enforcement officer.  (Filing No. 12-2, Attach. 1, at CM/ECF pp. 2-4.)  The Court of Appeals found this "compelling circumstantial evidence that the bag had been in Axtell's possession."  (*Id.* at CM/ECF pp. 8-9.)  Axtell's trial attorney attempted to raise the possibility that someone other than Axtell left the bag of methamphetamine in the police cruiser (*Id.* at CM/ECF p. 3.), yet the jury found beyond a reasonable doubt that Axtell had possessed the methamphetamine.

The Court of Appeals held that a rational juror could easily have found the essential elements of the crime were established beyond a reasonable doubt.  (*Id.* at CM/ECF p. 9.)  Axtell has not submitted any evidence, let alone clear and convincing evidence, that the Nebraska Court of Appeals was incorrect in any of its factual determinations.  28 U.S.C. § 2254(e)(1).  The grant of a writ of habeas corpus is not warranted here because the Nebraska state courts reasonably applied federal law.  As with Claim One, Axtell's Claim Two-Part 1 is dismissed.

IT IS THEREFORE ORDERED that:

15

1.     Petitioner's Petition for Writ of Habeas Corpus (filing no. 1) is dismissed with prejudice.

2.     A separate judgment will be entered in accordance with this Memorandum and Order.

October 21, 2009.                         BY THE COURT:

                                          *Richard G. Kopf*
                                          United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

16